UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEANGELO DOVE,<br><br>        Plaintiff,<br><br>        v.<br><br>RON NEAL, et al.,<br><br>        Defendants. | CAUSE NO. 3:24-CV-27-PPS-JEM |

OPINION AND ORDER

DeAngelo Dove, a prisoner without a lawyer, is proceeding in this case on two claims. First, there are the set of claims against Officer Kevin Cross, Lieutenant Nadine Smith-Robinson, Officer Darnell Crockett, Sergeant Jeniene Walton, Lieutenant Dennis Koen, Jacqueline Mayes, and Dr. Christina Chico "in their personal capacity for money damages for denying him medical care for injuries he suffered in a January 2023 fire in violation of the Eighth Amendment[.]" Second, there are the claims against Commissioner Christina Reagle, Warden Ron Neal, Assistant Warden Dawn Buss, Major Douglas Wardlow, Safety Hazard Manager Deborah Taylor, and Supervisor of Fire Training Gordon Beecher "in their personal capacity for monetary damages for deliberate indifference to the risk of harm posed by a fire that occurred in January 2023 in violation of the Eighth Amendment[.]" ECF 8 at 11.

All of the defendants except Dr. Chico now seek summary judgment, arguing Dove did not exhaust his available administrative remedies before filing this lawsuit. ECF 54. The matter is fully briefed. ECF 69, 70, 71, 74, 75, 76. I'll refer to this group of

defendants as "the State Defendants." Dr. Chico filed a separate motion for summary judgment, also arguing Dove did not exhaust his administrative remedies before filing this lawsuit. ECF 57. That motion is also now fully briefed. ECF 68, 77.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999); *see also Chambers v. Sood*, 956 F.3d 979, 984-85 (7th Cir. 2020). "Failure to exhaust is an

affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) (citation omitted). To exhaust remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id*. But inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). When prison staff hinder an inmate's ability to use the administrative process, administrative remedies are not considered "available." *Id.*

The record shows Dove submitted two grievances that must be addressed. Each grievance will be addressed in turn.

*January 19, 2023, Grievance*

The record shows Dove submitted a grievance on January 19, 2023, related to the January 14 fire. ECF 55-1 at 9; ECF 55-5. In the section of the grievance that asks the inmate to "State the relief that you are seeking," Mr. Dove did not request any relief and instead asked two questions. *Id*. On February 6, 2023, the Grievance Specialist rejected this grievance and returned it to Dove, stating on the "Return of Grievance" form that the grievance was not filled out properly because it did not suggest appropriate relief. ECF 55-6; *see* ECF 55-2 at 9-10 (providing that for a grievance to be properly submitted "[e]ach part of the form shall be completed" and the grievance must "suggest

3

appropriate relief or remedy."). The "Return of Grievance" form informed Dove he could revise and resubmit this grievance within five business days. ECF 55-6. However, Dove did not revise and resubmit this grievance after it was returned to him by the grievance office, which was a necessary step to exhaust the grievance. ECF 55-1 at 10; ECF 55-2 at 10 (if a grievance is returned to an inmate, "[i]t shall be the responsibility of the offender to make the necessary revisions to the grievance form and to return the revised form to the Offender Grievance Specialist within five (5) business days from the date that it is returned to the offender.").

In his response, Dove argues he was prevented from correcting and resubmitting his January 19 grievance because he was moved to disciplinary segregation "days" after he received the Return of Grievance form on February 6, which limited and slowed his ability to access the necessary paperwork. ECF 71 at 5-6. In their reply, the defendants provide supplemental attestations from the Grievance Specialist that Dove was not moved to segregation until over a year after the January 2023 fire and, regardless, inmates in segregation still have access to the Offender Grievance Process and all necessary grievance forms. ECF 74-1 at 1-2.

Here, Dove's vague assertions that he was moved to disciplinary segregation "days" after he received the February 6 Return of Grievance form, which "slowed" and "limited" his access to grievance forms, is insufficient to show his administrative remedies were unavailable. *See Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("It is well established that in order to withstand summary judgment, the non-movant must allege *specific* facts creating a genuine issue

4

for trial and may not rely on vague, conclusory allegations") (emphasis in original); *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough") (quotation marks, brackets, and citation omitted). Specifically, Dove does not explain exactly when he was moved to disciplinary segregation, does not explain why he did not revise and resubmit his January 19 grievance before he was moved to disciplinary segregation, and does not explain what efforts he took to revise and resubmit his January 19 grievance once he was sent to disciplinary segregation. Even accepting as true that being in the segregation unit "slowed" and "limited" Dove's access to grievance forms, this does not excuse Dove from making no efforts to revise and resubmit his January 19 grievance. Thus, because it's undisputed Dove did not revise and resubmit his rejected January 19 grievance, and Dove has not provided any concrete evidence his administrative remedies were unavailable, the undisputed facts show Dove did not exhaust his available remedies related to his January 19 grievance.

### *January 14, 2023, Emergency Grievance*

Second, Dove argues in his response he filed an "emergency grievance" on January 14, 2023, related to his claims in this lawsuit. Dove concedes he did not fully exhaust this emergency grievance. I therefore accept that as undisputed. Instead, Dove argues his administrative remedies were unavailable with regard to this emergency grievance because he never received any receipt or response to this emergency grievance from the Grievance Specialist. ECF 70 at 5-10.

5

Specifically, Dove testified at his deposition to the following facts: (1) on January 14, 2023, Dove placed an emergency grievance in his cell door bars for pick-up; (2) the emergency grievance was picked up by a member of correctional staff, but Dove does not recall who took the grievance; (3) Dove never received any receipt or response to his emergency grievance from the grievance office; and (4) Dove never submitted any written notice to the Grievance Specialist regarding the lack of receipt or response to his emergency grievance. ECF 55-4 at 18-31.

In their summary judgment motion, the defendants argue that, accepting as true that Dove submitted an emergency grievance on January 14 and never received any receipt or response from the grievance office, Dove nevertheless had available administrative remedies he did not exhaust before filing this lawsuit because he concedes he did not comply with the Offender Grievance Process' "notice requirement." Specifically, the Offender Grievance Process provides that once an inmate submits a grievance, the Grievance Specialist has ten (10) business days to screen the grievance and either accept and record it, or reject it. ECF 55-2 at 9-10. If an inmate submits a grievance and "does not receive either a receipt or a rejected form from the Offender Grievance Specialist within ten (10) business days of submitting it," the Offender Grievance Process imposes a "notice requirement" on the inmate by which the inmate must "notify the Offender Grievance Specialist of that fact (retaining a copy of the notice) and the Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within ten (10) business days." *Id*. at 9.

It is well established that the "notice requirement" of the Offender Grievance Process is a necessary step to exhaust a grievance. *See Lockett*, 937 F.3d at 1027 (even accepting as true that the inmate filed a grievance, he must provide evidence he contacted the Grievance Specialist when he received no response to his grievance); *Lipscomb v. Galipeau*, No. 3:22-CV-106-JD-MGG, 2023 WL 1778435, at *3 (N.D. Ind. Feb. 6, 2023) (granting summary judgment to the defendant because the inmate did not notify the Grievance Specialist after not receiving a response to his grievance); *Rambo v. Smiley*, No. 3:18-CV-740-JD-MGG, 2020 WL 1157865, at *3-*4 (N.D. Ind. Mar. 10, 2020) (same). But Dove argues this requirement of the Offender Grievance Process does not apply here because he filed an emergency grievance, which is subject to a different set of procedures. *See* ECF 55-2 at 5 (permitting an inmate to submit an emergency grievance, which shortens the Grievance Specialist's timeline for responding to the grievance).

Let's assume that Dove submitted an emergency grievance on January 14 and never received any receipt or response from the grievance office. The fact of the matter is that Dove was still required to comply with the Offender Grievance Process' notice requirement and notify the Grievance Specialist of the lack of receipt or response to his emergency grievance. Specifically, while Dove is correct that the Offender Grievance Process provides a different procedure for *responding* to an emergency grievance, there's no evidence the Offender Grievance Process changes the process for *screening* an emergency grievance.

The Southern District of Indiana recently addressed this issue and reached the same conclusion. In *Brock v. Centurion Health of Indiana, LLC*, No. 1:22-CV-1734-SEB-CSW, 2024 WL 247272, at *3 (S.D. Ind. Jan. 23, 2024), the court determined the inmate was required to notify the Grievance Specialist of the lack of response to his emergency grievance, as the emergency grievance procedure "does not set out different processes for screening, rejecting, or logging emergency grievances." Similarly, in *Peacher v. Reagle*, No. 1:21-CV-2361-JMS-TAB, 2022 WL 1017327 (S.D. Ind. Apr. 5, 2022), the court determined the Offender Grievance Process changes the procedure for *responding* to an emergency grievance, but does not change the procedure for *screening* an emergency grievance. Specifically, the court noted:

> To be sure, the grievance policy provides an accelerated timeline for emergency grievances. But it does not create a special deadline for every step of the process—only some. For example, the very first step in the grievance process is for the grievance specialist to decide whether to accept and record the grievance or to reject and return it. The usual time to take such action is 10 business days, and the emergency grievance provision does not create an alternative deadline.

*Id*. at *5 (citations omitted).

I agree with the analysis of the Southern District of Indiana. Specifically, nothing in the text of the Offender Grievance Process indicates the "notice requirement" does not apply to emergency grievances. In fact, Section X(C) of the Offender Grievance Process (which lays out the procedure for responding to a grievance) explicitly states that it does not apply to emergency grievances. ECF 55-2 at 10, Section C ("*If the matter is not an emergency grievance*, or a PREA grievance, the Offender Grievance Specialist has fifteen (15) business days from the date that the grievance is recorded to complete an

8

investigation and provide a response to the offender") (emphasis added). The fact that Section X(C) explicitly states it does not apply to emergency grievances while Section X(B) is silent on the matter implies that the screening procedure applies to emergency grievances. *See Bittner v. United States*, 598 U.S. 85, 94 (2023) ("When [a legislative body] includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning").

Additionally, reading the "notice requirement" out of the emergency grievance procedure would be problematic, as it would create a loophole by which any inmate could bypass the PLRA's exhaustion requirement merely by stating he submitted an emergency grievance and never received any receipt or response from the Grievance Specialist. This goes against the purpose of the PLRA's exhaustion requirement, which is to give the prison notice of the problem and an opportunity to address it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Requiring the inmate to notify the Grievance Specialist of the lack of response to his emergency grievance enforces this purpose by giving the Grievance Specialist an opportunity to address the grievance and potentially fix the problem.

Thus, the fact that Dove filed an emergency grievance rather than a normal grievance did not negate the need for him to follow up when he received no response to his grievance. Therefore, accepting as true that Dove submitted an emergency grievance on January 14, 2023, and never received any receipt or response from the grievance office, the undisputed facts show Dove still had available administrative remedies he did not exhaust before filing this lawsuit because he did not comply with the Offender

9

Grievance Process' requirement to notify the Grievance Specialist of the lack of receipt or response to his emergency grievance.

Accordingly, the undisputed facts show Dove submitted two relevant grievances but did not fully exhaust either grievance. Dove has not shown his administrative remedies were unavailable. The defendants have therefore met their burden to show Dove did not exhaust his available administrative remedies before filing this lawsuit. Summary judgment is warranted in their favor.

For these reasons, the court:

(1) GRANTS the defendants' motions for summary judgment (ECF 54; ECF 57);

(2) DENIES AS MOOT the defendants' motion for leave to supplement authority (ECF 78); and

(3) DIRECTS the clerk to enter judgment in favor of the defendants and against DeAngelo Dove and to close this case.

SO ORDERED.

ENTERED:  April 30, 2025.

      /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT